IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Criminal Action |
| v. ) | |
| ) | 12-10111-01-JTM |
| PAUL MARK ELY, II, ) | |
| ) | |
| Defendant. ) | |
| _____  ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION TO REVIEW DETENTION ORDER (Doc. 10),
AMENDED MOTION TO REVIEW DETENTION ORDER (Doc. 11),
AND MOTION TO REVIEW NUNC PRO TUNC ORDER
OF DETENTION PENDING TRIAL (Doc. 13)**

Comes now the United States of America, by and through its attorney Debra L. Barnett, Assistant United States Attorney for the District of Kansas, and responds to the defendant's Motion to Review Detention Order (Doc. 10), Amended motion to Review Detention Order (Doc. 11), and Motion to Review Nunc Pro Tunc Order of Detention Pending Trial (Doc. 13) as follows:

**Case History**

The defendant, Paul Mark Ely, II, was indicted on May 2, 2012, with three counts of being a prohibited person in possession of three firearms.

The United States requested a detention hearing pursuant to 18 U.S.C. §3142(f)(1)(E), in that, the defendant was charged with an offense involving the possession of a firearm. The detention hearing was held on May 9, 2012. At this hearing, the parties presented evidence

by proffer to the United States Magistrate Judge. In addition, the parties offered arguments concerning the application of the facts to the factors listed in 18 U.S.C. §3142(g).

The United States requested the defendant's detention based upon the argument that there was no condition of release or combination of conditions that would reasonably assure the appearance of the defendant as required, and the safety of any other person and the community.

The defendant asserted that there were conditions of release which would assure his appearance as required and the safety of the community.

After considering the evidence, arguments of counsel and the Pretrial Services Report, the United States Magistrate Judge made the following findings:

> 1. The nature of the charged offenses are serious and carry substantial potential penalties. The present alleged offense involves multiple firearms and raises significant concerns about the safety of the community if the Defendant is released.
>
> 2. The weight of the evidence against the Defendant is substantial.
>
> 3. The defendant has a very significant criminal history including convictions for crimes of violence, firearms and drugs. Significantly, the Defendant has a long history of noncompliance with court orders for probation and parole, and of absconding from supervision. The proffered evidence is that the Defendant made a substantial effort to evade apprehension for the present offense.
>
> 4. The Court has considered available options, and finds by a preponderance of the evidence that there are no conditions or combination of conditions that may assure the Defendant's presence for future proceedings in this matter, and by clear and

>convincing evidence that the Defendant is a danger to the community.
>
>5. The Court has considered and adopted the recommendations contained in the Pretrial Services Report.

(Doc. 12, pages 1-2.)

The defendant filed a Motion to Review Detention Order on May 11, 2012, requesting that the Court reconsider the United States Magistrate Judge's order of detention. (Doc. 10.)

**Proffered Facts**

A.   Information Derived From the Pretrial Services Report

The defendant is a 33 year old man. He is unemployed and has been for several months.

The defendant was living at 732 N. Piatt Avenue in Wichita, Kansas, with his girlfriend, Sara D. Williams, and another person named Jerry D. Muller.

The defendant's arrest history includes the following offenses: criminal threat, disorderly conduct, theft, aggravated battery, possession of drug paraphernalia, DUI, DWS, possession of controlled substances, burglary, aggravated assault, criminal damage to property, criminal possession of a firearm, criminal discharge of a weapon at a dwelling or vehicle, fleeing or eluding, domestic battery and identity theft.

The defendant has actually been convicted of theft (1996, 1997, 2008), possession of drug paraphernalia (1998), burglary and theft (2000), criminal possession of a firearm (2002), criminal discharge of a firearm at a dwelling or vehicle (2002), fleeing or eluding

(2002, 2008), domestic battery (2002), DUI (2002), DWS (2002, 2008), criminal threat (2004, 2005) and identity theft (2008).

The Wichita Police Department (WPD) has documented the defendant as a member of the White Supremacist gang called "Ostuerus Odinism." This is based on the defendant's admission in 2007 that he was a member. The defendant stated that he became a member while in prison and that he had to fight to become a member. The defendant has several tattoos that identify him as a White Supremacist--two swastikas, a white Viking, and Thor's hammer. In addition, in 2007, when the defendant made the previous statements to a WPD officer, the defendant was wearing a brass hammer that he made in prison as well.

If convicted of one count of being a felon in possession of a firearm, the defendant will qualify for the mandatory application of the Armed Career Criminal Act and face a mandatory minimum sentence of imprisonment of 15 years.

B.   Additional Information Proffered to the Court

   1.   Information from the WPD

On April 27, 2012, the WPD executed a search warrant at the defendant's residence. In order to gain entry into the home, the WPD utilized its SWAT and EOD sections. This was due in significant part to the defendant's gang affiliation, his criminal history, documented history of fleeing and eluding authorities when confronted, the allegations of drug dealing and the presence of surveillance cameras on the outside of the residence. Officers used force to gain entry and found the defendant in the back of the home as he tried to get out of the house and away from the police.

An interview with the defendant's girlfriend, Sara D. Williams, yielded the following information:

The house and utilities were maintained in the name of Ms. Williams because Mr. Ely did not want anything in his name. He told her that he did not want anything in his name because they would be able to trace it to him.

There were three guns in the bedroom shared by Ms. Williams and the defendant. Ms. Williams denied ownership of the guns but admitted that she touched them. She stated that she did not like guns and did not want them in the house.

Ms. Williams admitted that there was a significant amount of methamphetamine in a "book bag" and that she "knows what goes on inside her residence she does not stop it and occasionally assists Paul with selling his dope." Ms. Williams admitted that on occasion she accompanied the defendant when he delivered the drugs. The reason she went with him was so that if he was stopped by the police she was to take the book bag and hang on to it or leave the area walking away from the car stop and police.

Prior to the police entering the house on this occasion, the defendant saw the police attempting to make entry on the monitors. He took off running but yelled to her to get the book bag and flush the dope. Ms. Williams admitted that she started to follow his order but when she felt the blast on the door she dropped the book bag.

Ms. Williams stated that the defendant distributed drugs on a daily basis. He normally fronts it, with the clients paying him back after they sell the dope to their customers. Ms. Williams admitted that on several occasions she kept the books for the defendant.

Ms. Williams stated that the money in drug dealing is very good and that it allows them to buy anything or whatever they want.

The defendant set up the video surveillance because he wanted to monitor what was going on around the house, specifically to see the police.

The police found the guns, approximately $3,800 USC in the back area of the house (where they found the defendant), miscellaneous drug paraphernalia, cut and approximately 141 grams (gross weight) of methamphetamine.

The defendant was arrested and placed in the county jail. Sometime thereafter he was released. After the Indictment was returned herein, an arrest warrant was issued for the defendant. Officers went to his residence to arrest the defendant. Instead of voluntarily submitting to arrest, the defendant took off running through the house and out a door. He was eventually caught outside. Officers found some methamphetamine thrown along the path the defendant took.

2. Other Conduct

Defendant asks this Court to consider placing him on bond based upon his "long history of untreated substance abuse" and sudden desire to change his life. (Motion to Review Detention Order, Doc. 10, page 2.)

The United States has obtained recordings of phone conversations between the defendant and Ms. Williams. These conversations occurred after the defendant's arrest on his federal warrant but before the detention hearing. In these conversations, the defendant talks to Ms. Williams about (1) contacting a certain person to collect on a drug debt (so that a bond can be paid), (2) following "Josh's" advice, in that, "Josh" said that the defendant needed to tell Probation that he wanted treatment so that he would get a bond, (3) the WPD's discovery of the methamphetamine the defendant threw down during the chase preceding his

most recent arrest. As for the later, both the defendant and Ms. Williams talk about how they did not tell the police anything or admit anything, and they need to keep their stories straight.

## Standards for Detention

The Bail Reform Act of 1984 requires the Court to order a defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(e). The United States bears the burden of proof. *United States v. Dozal*, 2009 WL 873011, at *2 (D. Kan. Mar. 27, 2009).

The risk of flight and danger to the community factors are distinct sources of authority for detention. This means that the United States need only prove one or the other in order to warrant the defendant's detention. 18 U.S.C. §3142(f)(2)(A) or (B).

The United States must prove risk of flight by a preponderance of the evidence. It must prove danger to another person in the community by clear and convincing evidence. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

In determining whether the United States has met its burden, the Court considers the following listed factors:

  (1) The nature and circumstances of the offense charged;

  (2) The weight of the evidence against the person;

  (3) The history and characteristics of the person;

> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. §3142(g).

## Argument and Analysis

A.   <u>Nature and Circumstances of the Offense</u>

The defendant is currently charged with crimes involving the unlawful possession of firearms. Given the defendant's extensive criminal history, prior involvement with firearms and repeated supervision by other courts, the defendant clearly understood the prohibition he lived under as to the possession of firearms. In addition, United States would advise the Court that it intends to seek a superseding indictment in this case alleging crimes related to the distribution of methamphetamine and possession of a firearm in furtherance of a drug trafficking crime. The seriousness of these offenses is reflected in their penalties. Because the defendant is presently charged with serious offenses, any one of which carries a mandatory minimum 15 year prison sentence, this factor favors detention.

B.   <u>Weight of the Evidence Against the Defendant</u>

Based upon WPD's investigation, the grand jury found probable cause to believe that the defendant committed the crimes alleged. The United States believes that its case against the defendant is strong. As a result, this factor favors detention.

C.   <u>History and Characteristics of the Defendant</u>

The defendant has a lengthy criminal history. He has been afforded many opportunities to seek treatment, if he really wanted it, as opposed to using "Josh's"

suggestion to manipulate his release. In addition, he has had many opportunities to figure out that he needs to change his life. Instead, his criminal conduct has escalated, especially during the last several years.

The defendant's employment history is inconsistent. He has been unemployed, yet had $3,800 USC at the time of the search warrant. This was clearly drug money earned from his chosen profession.

The Pretrial Services Report also sets out the defendant's record while on supervision. In 2008 he was convicted in two separate cases in Sedgwick County District Court. The defendant was sent to KDOC for approximately six and one half months. He absconded less than two months after his parole. A couple of months later he was returned to supervision, but two weeks later absconded. A little over one month later he was returned to supervision, violated and incarcerated for two and one half months. One month after the defendant was paroled, he absconded. Six months later the defendant was returned to custody where he served another three months. The defendant was paroled on December 22, 2011. Thirteen days later a warrant was issued for his arrest and he was returned to supervision five days after the warrant was issued. The defendant's sentence expired on February 29, 2012.

On April 27, 2012, less than two months after the expiration of his previous sentence, the police find three guns, approximately 141 grams of meth and drug money in the defendant's residence. The defendant has not learned anything from his prior supervision. More importantly, he has repeatedly demonstrated a lack of respect for our laws and any court's supervision of him.

All of this indicates that the defendant does not have good character and does not take care of the important details of his life. Instead of obtaining a legitimate job, he sells drugs. The United States argues that the defendant's criminal history demonstrates that he does not respect the laws of our community.

The defendant's behavior demonstrates that there are no conditions or combination of conditions of release that will reasonably assure the safety of the community from the defendant's criminal behavior. Consequently, this factor favors detention.

D.   The Nature and Seriousness of the Danger Posed By Defendant's Release

The defendant sells drugs. He keeps guns and drugs in his house where he distributes drugs. The defendant is engaged in one of the most serious forms of criminal behavior in our society – drug dealing.

As this Court is well aware, drug dealing leads to and results in other forms of violent criminal behavior. The defendant's chosen source of income not only poses a risk to other people in our community but it promotes other acts of violence. If the defendant is released on a bond, his lifestyle and poor judgment will continue to pose a danger to the community. This factor also favors detention.

E.   Summary

Congress formulated the detention provisions of the Bail Reform Act as a potential solution to the societal problem of crimes committed by persons on pretrial release. *United States v. Salerno*, 481 U.S. 739, 749-50 (1987). The detention provisions are only applicable to individuals who have been arrested for specific categories of extremely serious offenses

as defined in 18 U.S.C. §3142(f). "Congress specifically found that these individuals are far more likely to be responsible for dangerous acts in the community after arrest." *Id*. at 750.

The defendant's proposed plan (in patient treatment, halfway house and pretrial supervision) does not negate the risk of flight or danger to the community factors demonstrated by the weight of the United States' evidence, the dangerous nature of the crimes he has committed, the defendant's failure to learn from his past or the fact that the defendant has failed to voluntarily comply with the requirements of his prior (and recent) court supervision.

The United States would argue that the evidence proves by a preponderance of the evidence that the defendant is a flight risk if released on bond. Due to the serious nature of the pending charges against the defendant, the defendant's contact with people who distribute drugs (including his girlfriend, Sara Williams), and the lengthy prison sentence that will follow if convicted, there is a strong likelihood that the defendant will flee if released on bond. There are no conditions of release that could prevent the defendant from fleeing, as he has repeatedly done in the past.

The United States has also demonstrated by clear and convincing evidence that, if released, the defendant is a risk to the community. The defendant has no means of legitimate financial support. He has not earned money legally for a significant period of time. When the defendant needs money, he turns to drug dealing to make ends meet. There is no question that he is a danger to the community. The standard conditions of release suggested in the defendant's plan do not address the defendant's failure to modify or learn from his past

behavior, or to modify his recent non-compliant attitude. Consequently, there is no reasonable assurance from the proposed plan that the defendant will suddenly begin living a law abiding life in our community and follow the Court's orders of supervision.

Wherefore, the United States respectfully requests that this Court deny the defendant's Motion to Review Detention Order (Doc. 10).

Respectfully submitted,

BARRY R. GRISSOM
United States Attorney

s/ Debra L. Barnett
DEBRA L. BARNETT
Assistant United States Attorney
301 N. Main, Suite 1200
Wichita, Kansas 67202
316-269-6481
K.S.Ct.No. 12729
Debra.Barnett@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Mr. Steven K. Gradert, attorney for defendant.

s/ Debra L. Barnett
DEBRA L. BARNETT
Assistant U.S. Attorney